WILLIAM H. SKIRM, JR., AND WILLIAM A. EGAN v. ALBERT R. HILLIKER AND FREDERICK FRIES.

Argued February 28, 1901—Decided June 10, 1901.

On breach of contract the damages to be awarded are those naturally arising from the breach of the contract itself, or reasonably in contemplation by the parties at the time of the contract. It is only where a contract is made under special circumstances, known to both parties, that recovery of damages resulting from its breach may be extended to loss sustained by reason of those circumstances.

On rule to show cause.

Before DEPUE, CHIEF JUSTICE, and Justices DIXON, COLLINS and HENDRICKSON.

For the defendants, in favor of the rule, *Frederick A. Rex.*

For the plaintiffs, *contra, Edwin Robert Walker.*

The opinion of the court was delivered by

COLLINS, J. The trial of this cause was had in the absence of the defendants and their attorneys and counsel. Affidavits are now presented tending to explain such absence and to show that the trial was a surprise; but they were irregularly taken and we have not considered them. There must be a new trial, however, by reason of an erroneous assessment of damages.

In the plaintiffs' declaration it was averred that on July 29th, 1899, by an agreement, in writing, of that date, a copy of which was annexed to and made a part of the declaration, the defendants, in consideration of $100, undertook to sell and convey to the plaintiffs, within one week, for the sum of $10,000, "certain patent rights and letters-patent of defendants." The copy so annexed reads as follows:

"July 29th, 1899.

"We, the undersigned, hereby agree to give to Messrs. Wm. Skirm and W. A. Egan an option until Tuesday evening, August 1st, on our patent and rights in new tire, at a purchase-price of ten thousand dollars ($10,000). If they desire this option extended, they can do so at the cost of one hundred dollars for each and every week until October 1st, at which time the option expires.

"ALBERT R. HILLIKER,
"FREDERICK FRIES."

It was further averred that on July 31st, 1899, the plaintiffs paid the defendants $300 for a three-weeks' extension of the option, and on August 19th, 1899, requested the defendants to sell and convey to the plaintiffs "the said patent rights and letters-patent," and tendered themselves ready and willing to pay the said sum of $10,000 and perform all things on their part to be performed. A breach of the agreement was assigned and damages were claimed as follows: "Yet the said defendants were then and there disabled from performing their part of the said agreement, because they did not then and there own or possess any letters-patent aforesaid, and then and there refused to convey said patent rights and letters-patent, and said they would not, and could not, fulfill, perform or carry out the agreement on their part, and would not, and could not, convey, sell and deliver to said plaintiffs said patent rights and letters-patent, but wholly neglected and refused so to do, whereby the said plaintiffs have lost and been deprived of divers great gains and profits which might and otherwise would have arisen and accrued to them from the ownership of said patent rights and letters-patent. And the said plaintiffs further say that after the making of the said bargain with the said defendants as aforesaid, and during the said week afterward, the said plaintiffs, relying upon the said promises of the said defendants, and expecting their performance thereof, did make and enter into a bargain for the sale and conveyance to Ernest L. Baldwin of said patent rights and letters-patent for the sum of $50,000, of which

the said defendants had notice, and thereby the said plaintiffs have sustained great loss, to wit, a loss of $40,000, and other damages amounting to the sum of $50,000, and therefore they bring their suit," &c.

At the trial there was no proof of any market price or value of the subject of the agreement, but the plaintiffs were awarded as damages the sum of $15,000 and interest, on proof that Baldwin had arranged to form a company that would pay the plaintiffs $25,000 cash for letters-patent on a bicycle tire such as the defendants had been making. It was testified that, when negotiating for the option, the plaintiffs told defendants that they were "going to sell" the patent, and that afterwards, before the refusal to convey, Mr. Skirm told Mr. Hilliker that a bargain for its sale had been completed. On the averments and proofs stated the assessment of damages was unwarranted.

The leading case on damages for breach of contract is *Hadley* v. *Baxendale, 9 Exch.* 341, decided in 1854. Baron Alderson laid down the rule that the damages to be awarded are those naturally arising from the breach of the contract itself, or reasonably in contemplation by the parties at the time of the contract, and that it is only where a contract is made under special circumstances, known to both parties, that recovery of damages resulting from its breach may be extended to loss sustained by reason of those circumstances. Therefore recovery for loss of profits of a mill resulting from delay in repairing a broken shaft on contract time was denied, because the special need of the shaft was not made known to the defendant. On the other hand, in *Borries* v. *Hutchinson,* 18 *C. B.* (*N. S.*) 445, decided in 1865, the loss of profits on a sale of caustic soda, an article not easily procurable in the market, was allowed to plaintiffs, who sued for breach of contract to sell them that article in order to enable them to fulfill their contract. Mr. Justice Erle said: "The vendor had notice that the vendees were buying for the purpose of resale to a subvendee on the continent. He made the contract, therefore, with knowledge that the buyers were buying for the purpose of fulfilling a contract they had made with a

merchant abroad." In the same year recovery for loss of profits on an intermediate sale was denied, and the case last cited was distinguished because of the vendor's knowledge of the circumstances under which the goods involved in that case had been purchased. *Williams* v. *Reynolds, 6 Best & S.* 495.

The application of the rule is general, and not confined to vendor and vendee. In 1872, in *Horne* v. *Midland Railway Co., L. R., 7 C. P.* 583, a common carrier was sued for loss of profits arising from the tardy delivery of a shipment of shoes sold by the shipper to a purchaser for the French army, who refused to accept the goods—the railway company not having been notified of the special circumstances under which the contract for transportation had been made—recovery for such loss was denied.

The rule laid down by Baron Alderson has been generally adopted, and has been declared, in terms, in this state. *Wolcott* v. *Mount, 7 Vroom* 262; *affirmed, 9 Id.* 496.

Applying it to the case in hand the special damage averred in the plaintiffs' declaration is excluded from consideration. The tentative sale to Baldwin was made after the defendants gave the option, and, of course, could not have been in contemplation by both parties when the option was given. To support a verdict taken *ex parte* the pleading will not be extended; but, if it should be, the mere general statement that the plaintiffs were "going to sell" the patent, would not suffice to charge the defendants with the loss of profits on any sale that was in prospect. General merchandise is always bought to sell again, and yet, as we have seen, the loss of profits on a sale that is thwarted by breach of the first vendor's contract is not recoverable. The difference between the market value of the commodity at the time the contract should have been performed and the lesser contract price is the normal measure of damage. The plaintiffs urge that a patent right is property of a peculiar character, having no market price, but that fact, if it be a fact, affords no reason for allowing damages not reasonably in contemplation by parties who contract with respect thereto.

The fact that the defendants had some knowledge of the

arrangement with Baldwin when they took money for an extension of the option, which the proof, at best, leaves but doubtful, would not entail upon them a greater liability than that already incurred; for they could not refuse the extension, and therefore their proceeding in their contract affords no inference of assumption of a different risk.  That this must be the rule in such cases is pointed out by the learned editor of *Mayne Dam.* (*Wood's ed.,* 1880), § 41.

Lastly, it is urged that because the rule we have been applying does not obtain in cases of tortious conduct, the defendants should be held to all resultant damages, because they were guilty of a fraud upon the plaintiffs, as, it is testified, they admitted that they never had a patent on the tire they manufactured.  The declaration clearly avers that they did have one, and, moreover, the action is not for deceit, nor does it sound in tort.

The rule to show cause will be made absolute.